UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 5:15-CV-193-WOB-CJS

JERRY WAYNE ABNER                                                               PLAINTIFF

v.                          **REPORT AND RECOMMENDATION**

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                                 DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Plaintiff Jerry Wayne Abner, brings this action under 42 U.S.C. § 405(g), challenging Defendant Commissioner's final decision denying his application for benefits under the Social Security Act. This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits. As explained below, the ALJ's decision was supported by substantial evidence, and it will therefore be **recommended** that Plaintiff's Motion for Summary Judgment (R. 10) be **denied**, and the Commissioner's Motion for Summary Judgment (R. 11) be **granted**.

I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The findings of the Commissioner are not

subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley,* 581 F. 3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id.* (citing *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (citing *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir 1997)).

In this case, Plaintiff must establish that he is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that he is not currently engaged in "substantial gainful activity." *Vance,* 260 F. App'x at 803 (citing 20 C.F.R. § 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate that he suffers from a severe impairment. *Id.* at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (citing 20 C.F.R. § 404.1520(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least 12 months, and the impairment meets or

equals a listed impairment listed in 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id*. (citing 20 C.F.R. § 404.1520(d)). Fourth, the claimant is not disabled if his impairments do not prevent him from doing his past relevant work. *Id*. Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy. *Id*. (citing *Abbott,* 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Jerry Wayne Abner has an alleged disability onset of March 24, 2012, when he was 50 years old. (A.R. (Administrative Record) 145). Plaintiff has an eighth-grade education, and has past relevant work history as a vending machine attendant, forklift operator, and drill operator. *(Id*. at 253). On June 14, 2012, Plaintiff filed an application for disability insurance benefits (*Id*. at 145). Plaintiff alleges he is disabled from working due to constant low back pain which radiates to his leg and foot; pain with standing, sitting, lifting, walking, bending and stooping; difficulty reading and writing; and difficulty with memory and concentration. (*Id.* at 254). Plaintiff also alleges he has depression and anxiety and is being treated for both. (*Id*. at 41).

Plaintiff's application was denied initially and again upon reconsideration. (*Id*. at 10). At Plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) Robert Bowling on November 25, 2013. (*Id*.). Plaintiff appeared and testified at the hearing; the ALJ also heard testimony from an impartial vocational expert (VE). (*Id*.). After receiving testimony and reviewing

the record, the ALJ issued a written decision on January 30, 2014, finding Plaintiff was not disabled within the meaning of the Social Security Act. (*Id*. at 10-22).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id*. at 12-22). *See* C.F.R. § 404.1520(a). At step one, the ALJ determined that Plaintiff had not engaged in gainful employment since March 24, 2012–the alleged onset date of his disability.[1] (*Id*. at 12). At step two, the ALJ found that Plaintiff had the following severe impairments: "disorders of the spine; affective disorders; anxiety disorders; and organic mental disorders." (*Id.*). At step three, the ALJ analyzed Plaintiff's impairments individually and in combination, and found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the level of severity set forth in Listings 1.04, 12.02, 12.04, or 12.06 of the Listing of Impairments under the applicable Federal Regulations. (*Id*. at 12-14).

The ALJ next considered the evidence and determined at step four that Plaintiff had the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b). Specifically, the ALJ stated:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 C.F.R.§ 404.1567(b), with the following limitations. The claimant can stand and walk for a total of 6 hours during an 8-hour workday. He can sit for a total of 6 hours in an 8-hour workday. The claimant should never be expected to climb ladders, ropes and scaffolds. He frequently can balance and climb ramps and stairs. He occasionally can stoop, kneel, crouch and crawl. He should avoid concentrated exposure to vibration. He should avoid all exposure to unprotected heights and the use of moving machinery. The claimant is limited to simple, routine and repetitive tasks performed in a work environment free of fast paced production requirements, and involving only simple work-related decisions with few, if any, workplace changes.

(*Id*. at 14).

---

[1] The ALJ found Plaintiff met the insured status of the Social Security Act through December 31, 2015. (A.R. 12).

4

Based on his RFC determination, the ALJ found that the Plaintiff could not perform his past relevant work. (*Id.* at 20). At step five, the ALJ heard testimony from an impartial VE and adopted her opinion that given an individual of Plaintiffs age, education, work experience, and RFC cited above, there are jobs that exist in significant numbers in the national economy that such an individual could perform, including unskilled occupations such as: inspector/sorter; packer; and hand packer. (*Id*. at 21). Accordingly, based upon this testimony, the ALJ determined that Plaintiff was therefore not "disabled" for Social Security purposes. (*Id*. at 22).

Plaintiff appealed the ALJ's decision to the Appeals Council. (*Id*. at 6). On May 15, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's January 30, 2014, decision the final decision of the Commissioner. (*Id.* at 1-3). On November 8, 2015, after having exhausted all other administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ's decision was not supported by substantial evidence. (R. 1). Plaintiff and Commissioner have filed Motions for Summary Judgment. (R. 10, R. 11).

In this appeal, Plaintiff presents two arguments for review: (1) the ALJ improperly discounted the opinions of every treating and examining physician in finding Plaintiff could perform a limited range of light work; and (2) the ALJ erred in failing to evaluate whether Plaintiff's condition met the criteria of Listing 12.05(C). (R. 10).

### III. ANALYSIS

**A. The ALJ did not err in his consideration of the opinion evidence offered by the examining and treating physicians.**

Plaintiff's Motion for Summary Judgment claims the ALJ's evaluation of the medical opinions of record improperly discounts the opinions of treating and examining physicians. (R. 10,

at 4-11). Although the ALJ is tasked with making the ultimate determination in any disability application, he is obligated to consider the opinion evidence provided by medical experts. 20 C.F.R. § 404.1537(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). Doctors who have actually treated (as opposed to merely examined) a claimant are especially valuable in helping the ALJ make a disability determination. "Generally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004) (citing *King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984); 20 C.F.R. § 404.1527(d)(2)). However, treating physician's opinions do not automatically bind the ALJ; these opinions are only entitled to controlling weight when they are supported by objective medical evidence and are consistent with other substantial evidence in the record, *Wilson* 378 F.3d at 544, and not contradicted by substantial evidence to the contrary, *Loy v. Secretary of Health & Human Services*, 901 F.2d 1306, 1308-09 (6th Cir. 1990). *See also* C.F.R. § 404.1527(d)(2).

If the opinions of treating providers do not deserve controlling weight, the ALJ must determine what weight to give them by considering the following factors: the length, nature, and extent of the treatment relationship; the supportability of the physician's opinions and the opinion's consistency with the rest of the record; and the physician's specialization. *Steagall v. Comm'r of Soc. Sec.*, 596 F. App'x 377, 380 (6th Cir. 2015) (citing *Wilson,* 378 F.3d at 544). If the ALJ finds the treating physician's opinion fails to meet these conditions, he may discount that opinion so long as he gives good reasons for doing so. 20 C.F.R. § 404.1527(d)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Gayheart,* 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439-40 (6th Cir. 2010).

In determining what weight to give to the opinion of a nontreating physician, the ALJ must apply the same factors considered for treating physicians' opinions, i.e., the opinion's supportability and consistency and the physician's specialization. *See Steagall,* 596 F. App'x at 380, at *3 (citing *Gayheart,* 710 F.3d at 379). "The ALJ cannot apply greater scrutiny to the opinions of treating sources over those of non-treating sources." *Id.* However, the "good reasons" requirement does not apply to a non-treating source. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

Plaintiff's Motion for Summary Judgment cites four doctors whose records were allegedly improperly weighed or interpreted by the ALJ: Dr. Compton, Dr. Basham, Dr. Haziq and Dr. Brooks. Contrary to Plaintiff's assertions, the evidence provided by each of these doctors was properly considered and weighed by the ALJ to the necessary degree.

Dr. Ralph Compton has been Plaintiff's primary care physician since Fall of 1995. (A.R. 238). The recent and more regular treatment Plaintiff received from Dr. Compton primarily addressed Plaintiff's back and leg pain. (*Id*. at 262-82). Dr. Derwood Basham is a physician in Dr. Compton's office. Plaintiff consulted with Dr. Basham twice, on September 28, 2012, and May 23, 2013, to evaluate his back pain. (*Id*. at 300-02). Dr. Compton and Dr. Basham each expressed the view that Plaintiff would not be able to continue working as a result of his injuries. Dr. Compton stated on January 31, 2013, that Plaintiff would not be able to perform work activities even at a sedentary level moving forward. (*Id*. at 307). Dr. Basham had a similar opinion, stating that Plaintiff would not be able to work in the future as a result of his maladies. (*Id.* at 304).

The ALJ's opinion indicates that he considered the objective and opinion evidence provided by Drs. Compton and Basham when assigning an RFC to Plaintiff. (*Id*. at 19). In his decision, the ALJ explains his reasoning for assigning "little weight" to the opinions of these two doctors:

> The undersigned acknowledges that treating physicians Dr. Compton and Dr. Basham opined in treatment notes that the claimant cannot perform even sedentary work activities. (Exhibit Nos. 6F, 7F at 1-3, 5-7). A treating physician's medical opinion, regarding the nature and severity of an impairment, is entitled to great weight absent persuasive contradictory evidence. *Coffman v. Bowen,* 829 F.2d 514 (4th Cir. 1987). When supported by objective medical evidence and consistent with other substantial evidence of record, that opinion is entitled to controlling weight. *SSR* 96-2p. However, statements such as that a claimant meets a listing, is disabled, or is unable to work or perform a past job are administrative findings rather than medical opinions. Such dispositive findings, requiring familiarity with the Regulations and the legal standards set forth therein, are reserved to the Commissioner, who cannot abdicate the statutory responsibility to determine the ultimate issues of disability. A physician's opinion on such an issue therefore never can be entitled to controlling weight, but instead must be carefully considered to determine the extent to which it is either supported by the record as a whole or contradicted by persuasive evidence. 20 C.F.R. 404.1527(d)(2) and 416.927(d)(2); *SSR* 96-5p. Here, the undersigned has considered and given little weight to Dr. Compton's and Dr. Basham's opinions regarding the extent of the claimant's disability, as those opinions are not consistent either with the bulk of the objective evidence in the record, or with the claimant's own statements during the hearing concerning his disabilities. These opinions are inconsistent with the findings of neurosurgeon Brooks.

(*Id.* at 20).

Plaintiff's Motion for Summary Judgment suggests that Dr. Compton's opinion as a treating physician was entitled to deference over conflicting opinions from nontreating sources, and that the ALJ's assignment of little weight to the favorable opinions of Dr. Compton and Dr. Basham was therefore an error. However, the portion of the ALJ's opinion quoted above indicates that, upon review of the entire record, including the objective medical evidence and Plaintiff's own statements, the opinions of Dr. Compton and Dr. Basham were unsupported. As the ALJ is the ultimate

determiner of disability, this was well within his authority to decide, so long as there was substantial evidence to support that decision.

Review of the record reveals there was substantial evidence to support the ALJ's determination that the opinions of Dr. Compton and Dr. Basham were against the weight of the evidence. The ALJ's opinion examines all the relevant medical evidence, including the findings of Dr. Compton and Dr. Basham, in detail, and points out several sources that contradict the assertion that Plaintiff was completely incapable of work. The decision points out that Dr. Brooks (discussed below) administered straight leg raising, Lasegue, Flip, Scoville, and Patrick's tests to Plaintiff in May of 2012, which all returned normal results. (A.R. 17). The ALJ's decision also points out that Dr. Brooks found "no evidence of weakness, atrophy, drift, sensory loss, or reflex asymmetry." (*Id.*). The decision also highlights that tests performed in July 2012 by Dr. Haziq (discussed below) found limited range of motion in the lumbar spine but otherwise largely normal examination findings. (*Id.*). Given the extensive contradictory evidence cited to in the ALJ's opinion, the Court cannot find that the ALJ's assignment of little weight to the opinions of Drs. Compton and Basham was not supported by substantial evidence.

Another physician whose evidence is alleged by Plaintiff to have been improperly weighed by the ALJ was Dr. Naushad Haziq. Dr. Haziq performed an examination of Plaintiff on July 19, 2012. (*Id.* at 286-93). Although Dr. Haziq was not a treating physician, as he only performed one examination on Plaintiff on one date in preparation for Plaintiff's disability hearing, the ALJ was still required to consider his report as part of the complete medical record. 20 C.F.R. § 404.1537(c). Dr. Haziq's report of his examination noted that Plaintiff had moderate severe pain, tenderness and

paravertebral muscle spasm extending from T6 through S1, with moderate to severe limitation of movement of the lumbar spine. (*Id.* at 289).

The ALJ noted the examination and report of Dr. Haziq in his analysis of Plaintiff's range of motion and limitations. The ALJ assigned "significant" weight to Dr. Haziq's analysis. (*Id.* at 19). The ALJ explained that Dr. Haziq:

> [F]ound no range of motion or significant other limitations except as to the claimant's lumbar spine. Dr. Haziq's diagnostic impressions, of low back pain with symptoms of radiculopathy and weakness of the lower extremity, and degenerative disc disease with spinal and neural foraminal stenosis (Exhibit No. 4F), are supported by other objective evidence in the record.

(*Id.*).

Plaintiff's Motion for Summary Judgment claims that the ALJ's interpretation of Dr. Haziq's records is counterfactual. (R. 10-1, at 9-10). While the ALJ cites Dr. Haziq's evidence to support his RFC finding that Plaintiff was not disabled, Plaintiff's Motion cites the exact same evidence and states that it "appears to concede the Plaintiff's case." (R. 10-1, at 10). Given that Plaintiff's complaint regarding Dr. Haziq's evidence is not that the ALJ failed to examine or weigh the evidence but merely that he examined the evidence and came to the wrong conclusion, the Court sees no reason to override the wide latitude given to an ALJ in determining a claimant's RFC, since applying medical evidence and opinion to determine an RFC is an ALJ's job. Even if an independent reviewer could look at the same evidence as the ALJ and come to the opposite conclusion regarding a claimant's RFC, that fact in itself is insufficient to declare the ALJ's decision invalid, and Plaintiff's Motion for Summary Judgment does not adequately demonstrate that the ALJ's decision was not supported by substantial evidence.

Plaintiff makes the same basic argument regarding the ALJ's interpretation of the data provided by Dr. William H. Brooks. Plaintiff was referred by Dr. Compton to Dr. Brooks and was seen for one consultation on May, 22, 2012. (A.R. 283). Dr. Brooks' opinion was that Plaintiff had degenerative disc disease. (*Id*. at 284). Additionally, Dr. Brooks found no evidence of a herniation of the interveterbral disc. (*Id.*). Dr. Brooks at that time concluded surgery was not an option and recommended an epidural steroid injection. (*Id.*). The ALJ's opinion indicates that this data was appropriately considered.

> Dr. Brooks assessed the MRI as showing degenerative disc disease, without evidence of herniation. He believed the claimant's degenerative disc disease was a manifestation of his genetic predisposition for degenerative osteoarthritis. Surgery was not an option although the claimant had mild neuroforaminal and spinal stenosis. Relafen, Percocet and Soma were prescribed, and the claimant was referred for an epidural steroid injection.

(A.R. 17).

In his opinion, the ALJ explained how Dr. Brooks' evidence tended to support his finding that Plaintiff could perform light work and was therefore not disabled.

> [T]he claimant's impairments cause significant limitations but, considering the opinion of Dr. Brooks and examining source opinions, those limitations are not so severe as to preclude him from being able to meet the demands of basic work activities, and are not contrary to a finding that he has the residual functional capacity for work at the assigned level.

(*Id*. at 20).

Plaintiff's Motion for Summary Judgment claims that the ALJ's citation of Dr. Brooks' data in support of his finding that Plaintiff was not disabled was in error, stating that "there is nothing in the report of Dr. Brooks which would support a conclusion that the plaintiff is capable of performing light exertional level work as found by the ALJ." (R. 10-1, at 9). However, the records from Dr.

11

Brooks' consultation could be reasonably be read to support the ALJ's RFC. Although Dr. Brooks did find some limited range of motion of the lumbar spine, Plaintiff's straight leg raising, Lasegue, Flip, Scoville, and Patrick's tests were normal. (A.R. 284). Additionally, Dr. Brooks wrote that he found "no evidence of weakness, atrophy, drift, sensory loss, or reflex asymmetry." (*Id.*). Given these results, it was not an abuse of the ALJ's discretion to read Dr. Brooks' data as indicative of Plaintiff's ability to perform light work.

In summary, the ALJ concluded Plaintiff could perform a limited range of light work. This was based upon the ALJ's consideration of the examination findings and opinions of Drs. Brooks and Haziq, which the ALJ found supported the state agency doctor's opinions (*id.* at 78-80) and were consistent with the overall evidence of record (*id.* at 20). This conclusion was also based upon the ALJ's consideration and reasoned rejection of the statements of the treating physicians that Plaintiff could not perform even sedentary work, which the ALJ found were not consistent with the overall record, including the other medical evaluations and opinions, and the treating doctors' own conservative treatment.

**B.      The ALJ did not err in not finding Plaintiff met the criteria of Listing 12.05(C).**

Plaintiff contends that the ALJ erred at step three of the sequential process when he failed to consider whether Plaintiff met the criteria for Listing 12.05(C) based on Plaintiff's low IQ score. (R. 10, at 11). Plaintiff argues that the ALJ never mentioned or discussed whether Plaintiff met the criteria of Listing 12.05, which he qualified for. (*Id.*). The Commissioner contends that the ALJ, in considering the listings and Plaintiff's claim generally, validly dismissed the low IQ score assessed by Jennifer Wilke-Deaton, M.A. that was referred to in Plaintiff's Motion, and therefore Plaintiff did not meet Listing 12.05. (R. 11, at 5).

>Listing 12.05 provides in pertinent part as follows:
>
>Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
>The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
>>C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

Plaintiff alleges that he meets Listing 12.05(C) and that the ALJ failed to properly evaluate him under this Listing. Plaintiff's records indicate that he was given a psychological evaluation on August 27, 2012, by Jennifer L. Wilke-Deaton, M.A., a licensed psychological associate. (A.R. 294-99). As part of the evaluation, Ms. Wilke-Deaton diagnosed Plaintiff with an IQ of 65, a number in the first percentile. (*Id.* at 297). Ms. Wilke-Deaton's report also assessed Plaintiff with the following impairments: ability to understand, remember, and follow through with simple instructions—markedly impaired; ability to sustain attention and persistence—markedly impaired; ability to relate with others—moderately impaired; and ability to adapt or respond to pressures associated with day-to-day stress—markedly impaired. (*Id.* at 298). Plaintiff argues that due to his low IQ score meeting one of the requirements of Listing 12.05(C), the ALJ was obliged to consider whether Plaintiff had demonstrated "a physical or other mental impairment imposing an additional and significant work-related limitation of function" that would, in conjunction with the IQ score, qualify Plaintiff as mentally retarded under the Listing. (R. 10-1, at 11-12 (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).

The ALJ's opinion did not specifically mention Listing 12.05 when determining during step 3 that Plaintiff did not meet any of the Listings, despite specifically considering listings 12.02, 12.04, and 12.06 and finding that Plaintiff did not have any impairment or combination of impairments that meets or medically equals the severity one of those impairments. (A.R. 12-13). However, the ALJ's opinion did specifically address the IQ score of 65 that was given by Ms. Wilke-Deaton.

> Little weight is given to the August 2012 opinion of psychological consultative examiner Jennifer Wilke-Deaton, who reported test results indicating a full scale IQ of 65 and extremely low intellectual functioning. (Exhibit No. 5F). Ms. Wilke-Deaton did not take into account the claimant's acknowledged difficulties in reading and math, or the likelihood that his test scores were decreased due to an unresolved learning disorder. The low IQ scores are inconsistent with the claimant's work history including several long-term jobs which required independent activity, as well as with his ability to perform activities of daily living with relatively minor limitations. Both Dr. Haziq and field office employees noted the claimant showed no difficulties in the areas of concentration and understanding and Dr. Haziq noted the claimant could speak understandably and follow instructions without difficulty.

(*Id.* at 19). It is clear from the ALJ's opinion that he did not consider the IQ score diagnosed by Ms. Wilke-Deaton to be valid. Courts within the Sixth Circuit have recognized that an IQ score need not necessarily be considered valid by a reviewing ALJ if that score is incongruous with the rest of the available evidence.

> Courts have found IQ scores to be invalid based on the test subjects' bad faith during the examination. *See, e.g.*, *Shepherd v. Sullivan*, 889 F.2d 1088, at *4 (6th Cir. 1989) (unpublished) ("IQ test was invalid due to bad faith and malingering"); see also *Lipford v. Sec'y of HHS*, 762 F.2d 1009 (6th Cir. 1985) (unpublished). A finding that the claimant was uncooperative or acted in bad faith during the test, as [claimant] asserts, is not required, however, to properly invalidate an IQ score. Other factors outside of the test itself, including life skills, daily activities, and past work experience, have all been considered as well. See *McDonald v. Sec'y of HHS*, 786 F.2d 1165, at *13 (6th Cir. 1986) (unpublished) ("Care should be taken to ascertain that test results are consistent with daily activities and behavior" (quoting § 12.00(B)(4)(2); *accord* Muncy v. Apfel, 247 F.3d 728, 733 (8th Cir. 2001) ("An ALJ may disregard a claimant's IQ score when it is derived from a one-time examination

14

>by a non-treating psychologist, particularly if the score is inconsistent with the claimant's daily activities and behavior.").

*Brooks v. Astrue*, 2010 WL 1254323, at *4 (N.D. Ohio 2010).

Plaintiff's Motion for Summary Judgment argues that the ALJ's reasons for giving little weight to Plaintiff's psychological evaluation are not credible. The Motion derides as illogical the ALJ's statement that Plaintiff's IQ score could have been artificially deflated by reading and math difficulties or an undiagnosed learning disorder, suggesting that those difficulties would in fact be supportive of a low IQ score as symptoms of mental retardation. (*Id.* at 13). Plaintiff also argues that his work history should not weigh against the credibility of his low IQ score, citing the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) for the proposition that "[t]he majority of people with Moderate Mental Retardation [which is one level below the Listing that Plaintiff alleges he meets] 'are able to perform unskilled or semiskilled work under supervision in sheltered workshops or in the general workforce.'" (R. 10-1, at 13 (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV) 43 (4th ed. 1994)). Finally, Plaintiff dismisses the ALJ's reference to the other examining physicians' observations regarding Plaintiff's mental health as an attempt "to use some cursory observations by a physician giving an internal medical examination to discount the opinion of a trained psychologist. . . . this is a feeble attempt to discount a report to which the ALJ does not wish to give appropriate weight." (*Id.*).

Despite Plaintiff's arguments, the ALJ's stated reasons for giving little weight to Wilke-Deaton's report, and thereby invalidating Plaintiff's low IQ score, were appropriate. The Court particularly notes the ALJ's discussion of Plaintiff's daily activities and work history, as courts within the Sixth Circuit have found these factors to be acceptable reasons for an ALJ to invalidate

a low IQ score. For example, in *Courter v. Commissioner of Social Security*, the Sixth Circuit cited the claimant's daily functions as supportive of an ALJ's decision to discount a psychologist's assignment of an IQ of 59.

> [T]he following evidence was before the ALJ and supported his finding that Claimant did not qualify as mentally retarded under Section 12.05: Claimant was able to care for herself and her father's apartment, including cooking, cleaning, shopping, keeping track of her medical appointments, and maintaining personal hygiene. She had extensive prior work history as a cleaner and prep cook for several different companies[.]

*Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713 (6th Cir. 2012); *see also Lowes v. Comm'r of Soc. Sec.*, 2013 WL 4413751 (6th Cir. 2013) (finding that claimant's hobbies and work history were evidence supporting the ALJ's decision not to declare claimant disabled despite a measured IQ score in the necessary range). *Courter* presents evidence that is very similar to that in the case at bar. Here, Plaintiff Abner indicated that he was able to cook something simple, bathe himself, clothe himself, take out the garbage, drive himself, and do minimal shopping. (A.R. 214-18). He also indicated in his hearing testimony that he goes for walks occasionally. (*Id.* at 48).

Additionally, as the ALJ indicated, Plaintiff had significant work history as a drill operator, forklift operator, and a vending machine attendant. (*Id.* at 20). This work activity, which included skilled and semiskilled jobs, was appropriately considered by the ALJ to weigh against the validity of Wilke-Deaton's report, and by extension, Plaintiff's low IQ score.

Plaintiff's Motion cites other aspects of his life to support the notion that he is qualified for the 12.05(C) listing. Plaintiff only completed eighth grade and dropped out after trying to complete ninth grade twice. (*Id.* at 295). Additionally, Plaintiff alleges that he was in special education

classes and remembered receiving D's and F's throughout school. (*Id.*). Plaintiff also suggests that he struggles with reading and mathematics. (*Id.*).

This educational history is not sufficient for the Court to find that the ALJ abused his discretion in finding that Plaintiff did not meet the 12.05(C) listing, especially in light of the other facts. In *Justice v. Commissioner of Social Security*, the Court upheld the ALJ's determination that the claimant did not meet the requirements for a 12.05(C) Listing despite a similar educational background as Plaintiff in this case. *Justice v. Comm'r of Soc. Sec.,* 515 F. App'x 583 (6th Cir. 2012) ("[a]lthough [claimant] was enrolled in special education classes and dropped out after the ninth or tenth grade, he acknowledges basic reading and mathematical proficiency."). Like the claimant in *Justice*, Plaintiff does possess basic intellectual capabilities necessary to function on his own; he acknowledged in his hearing testimony that he has some reading capability and can write. (A.R. 32-33). This further supports the ALJ's opinion in making the determination that Plaintiff did not meet the Listing 12.05(C).

Plaintiff bears the burden of demonstrating his impairments meet or equal a listed impairment. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). Here, the ALJ found the IQ score assessed by Wilke-Deaton was inconsistent with Plaintiff's work history and activities of daily living which he had performed with only minor limitations. (A.R. 19). In these circumstances, the ALJ did not have to consider whether Plaintiff met the additional factors for a 12.05(C) listing. Plaintiff has failed to successfully demonstrate that the ALJ's determination the assessed IQ score was not valid was not supported by substantial evidence. The ALJ's decision on this issue should therefore be affirmed.

## IV. CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's decision is supported by substantial evidence and should be affirmed. Accordingly, **IT IS RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (R. 10) be **denied;**

2. Defendant's Motion for Summary Judgment (R. 11) be **granted;** and

3. Judgment be entered and this matter be **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within **fourteen (14) days** of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984) *aff'd,* 474 U.S. 140 (1985). A party may file a response to another party's objections within **fourteen (14) days** after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Dated this 27th day of July, 2016.

Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\social security\15-193 Abner.wpd